UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| CLARCY MILLER, by her Attorneys-in-Fact, Juanita L. Morrish and Vicki D. Coughlin, EMERICK BOSNAK, by his Guardian, Mark L. Wrubel, ROSE ESTHER COHN, by her Conservator, John Yun, DOLORES KALOUSDIAN, by her Attorney-in-Fact Justin Kalousdian, and JEAN GENEROU, individually and on behalf of a class of all other persons similarly situated, | Case No. 09-13683<br><br>Honorable Nancy G. Edmunds |
|     Plaintiff(s), | |
| v. | |
| JANET OLSZEWSKI, Director, Michigan Department of Community Health, and ISMAEL AHMED, Director, Michigan Department of Human Services, | |
|     Defendant(s)._____/ | |

**OPINION AND ORDER GRANTING IN PART DEFENDANTS' MOTION
<u>FOR STAY OF PROCEEDINGS [8]</u>**

This matter comes before the Court on Defendants' motion for stay of proceedings. The parties have fully briefed the motion. The Court finds that the facts and legal arguments are adequately presented in the parties' papers such that the decision process would not be significantly aided by oral argument. Therefore, pursuant to E.D. Mich. L.R. 7.1(e)(2), it is hereby ORDERED that the motion be resolved on the briefs submitted. For the reasons set forth below, Defendants' motion is GRANTED IN PART. Under the doctrine of primary jurisdiction, this Court STAYS the case pending a determination by the Centers

for Medicare and Medicaid (CMS) of Defendants' outstanding Michigan Medicaid State Plan amendment, NOT TO EXCEED 120 DAYS.

**I.    Facts**

In this action, brought under 42 U.S.C. § 1983, Plaintiffs allege that the policy of Janet Olszewski, Director of the Michigan Department of Community Health, and Ismael Ahmed, Director of the Michigan Department of Human Services, (Defendants) regarding the computation of a long-term-care-recipient's patient-pay amount, after becoming eligible for Medicaid (post-eligibility contribution to care), violates federal law. Specifically, Defendants contend that the policy of the Michigan Department of Community Health (DCH), which is implemented by the Michigan Department of Human Services (DHS), as set forth in Part 546 of the DHS Program Eligibility Manual, is in violation of 42 U.S.C. § 1396a(r)(1)(A) and 42 C.F.R. § 435.725 because the policy—in its post-eligibility process of calculating the amount a long-term-care-recipient must pay towards the cost of his care—does not allow a deduction, from the recipient's income, for previously incurred necessary medical or remedial care expenses, to which the recipient is currently liable (e.g., current payments on old bills), that are not subject to payment by a third party (including Medicare and other health insurance premiums, deductibles, or coinsurance) regardless of the reason for nonpayment, and which are recognized under Michigan law but are not covered under Michigan's Medicaid plan (i.e., services listed as covered services in Michigan's Medicaid plan, as well as services the plan does not cover), including those services which were incurred prior to the recipient's eligibility for Medicaid (pre-eligibility medical expenses or PEME).

**A.  Medicaid Program**

The Medicaid program was established in 1965 by Title XIX of the Social Security Act. *See* Social Security Amendments of 1965, Title XIX, Pub.L. No. 89-97, 79 Stat. 286, 343-53 (codified as amended at 42 U.S.C. § 1396a). Designed to provide financial assistance to persons whose income is insufficient to meet the costs of medical care, the Medicaid program functions as a partnership between the federal government and the states. 42 U.S.C. § 1396a(a)(10). After a state elects to participate in the program, the federal government shares the costs of providing medical assistance. 42 U.S.C. § 1396a(a)(2). In return, the state agrees to comply with the Medicaid statute and any administrative regulations[1] promulgated by Centers for Medicare and Medicaid (CMS). 42 U.S.C. § 1396a(a)(1).

States, like Michigan, participate in the Medicaid program through state plans and amendments to those plans. CMS, as it is responsible for administering the Medicaid program, has the authority to review and approve state plans and state plan amendments.

> CMS regional staff reviews State plans and plan amendments, discusses any issues with the Medicaid agency, and consults with central office staff on questions regarding application of Federal policy.

42 C.F.R. § 430.14. Following its review of a state's plan, or an amendment thereto, CMS determines whether it is in compliance with the applicable federal statutory and regulatory requirements.[2]

---

[1] *Maryland Dept. of Health & Mental Hygiene v. Centers for Medicare and Medicaid Svcs.*, 542 F.3d 424, 426 (4th Cir. 2008) ("As the federal agency charged with providing program oversight, CMS promulgates rules that state Medicaid agencies must follow.").

[2] *See* 42 U.S.C. § 1396a(a); *see also* 42 C.F.R. § 430.15. Section 430.15 provides:
   (a) Basis for action.
   (1) Determinations as to whether State plans (including plan amendments and administrative practice under the plans) originally meet or continue to

**B.  Recipient Eligibility**

Consistent with Medicaid's role as a poverty program, it permits two basic categories of applicants to receive medical assistance: "categorically needy" and "medically needy." 42 U.S.C. § 1396a(a)(10). "The categorically needy are applicants whose low income alone qualifies them to receive Medicaid benefits. By contrast, medically needy applicants have become impoverished through medical expenditures; while they have sufficient income to afford basic living expenses, they cannot afford expensive medical care." *Maryland Dept. of Health & Mental Hygiene*, 542 F.3d at 429 (internal citations omitted). To establish eligibility for the medically needy, an applicant's pre-eligibility income must be determined.

"Pursuant to 42 U.S.C. § 1396a(a)(17), Congress has delegated to CMS exceptionally broad authority to promulgate regulations [to] determin[e] the extent of income ... available to medically needy applicants." *Maryland Dept. of Health & Mental Hygiene*, 542 F.3d at 429. Section 1396a(a)(17), in pertinent part, provides

> for flexibility in the application of such standards with respect to income by taking into account, *except to the extent prescribed by the Secretary*, the costs ... incurred for medical care or for any other type of remedial care recognized under State law[.]

---

meet the requirements for approval are based on relevant Federal statutes and regulations.
(2) Guidelines are furnished to assist in the interpretation of the regulations.
(b) Approval authority. The Regional Administrator exercises delegated authority to approve the State plan and plan amendments on the basis of policy statements and precedents previously approved by the Administrator.
(c) Disapproval authority.
(1) The Administrator retains authority for determining that proposed plan material is not approvable or that previously approved material no longer meets the requirements for approval.
(2) The Administrator does not make a final determination of disapproval without first consulting the Secretary.

42 U.S.C. § 1396a(a)(17) (emphasis added). Under CMS's regulations, an applicant's "qualifying income" is determined by deducting certain health care expenses incurred by the applicant from his pre-eligibility income. 42 C.F.R. §§ 435.831, .914.

> If a medically needy applicant's pre-eligibility income exceeds the Medicaid limit, CMS's regulations direct states to deduct incurred medical expenses in order to reduce that income to the Medicaid eligibility level. § 435.831(d). CMS's regulations term this the "spenddown" process and require states to calculate the amount of "countable income" medically needy applicants must "spenddown" before Medicaid will cover their medical costs. § 435.831.
>
> In order to determine the amount of an applicant's countable income, states first subtract certain standard deductions from gross income. § 435.831(b). If that amount equals or is less than the state income standard, the applicant is deemed eligible for Medicaid benefits. § 435.831(c). If that amount exceeds the state income standard, however, the applicant may become eligible for benefits by "spending down" incurred medical expenses to meet the state eligibility standard. § 435.831(d).
>
> As defined by CMS' [sic] regulations governing the spenddown process, "incurred medical expenses" are any medically necessary expenses for which an applicant would otherwise be liable. § 435.831. CMS requires states to deduct expenses that the applicant is repaying either at the time of application or that were incurred within three months prior to the filing of the application. § 435.831(f). Although states may choose to deduct more bills, CMS does not require them to do so. § 435.831(g).

*Maryland Dept. of Health & Mental Hygiene*, 542 F.3d at 429-30. If the adjusted income—the pre-eligibility income following successful completion of the "spenddown" process—is reduced to below a threshold level, applicants are deemed eligible for Medicaid benefits, such as nursing home long-term-care. 42 C.F.R. § 435.831.

### C. Post-eligibility Contribution to Care

Medicaid recipients who are nursing home residents, with income remaining after the completion of the spenddown process, are required to contribute their "excess" income to

5

the nursing home to defray the cost of their care. 42 U.S.C. § 1396a(a)(17); 42 C.F.R. §§ 435.725, .832.

> In order to determine the amount of income a resident has available after eligibility, states calculate an amount CMS's regulations term the "*post-eligibility contribution to care.*" §§ 435.725, 435.726.
>
> States calculate this amount by undertaking a process similar to the spenddown process. First, they determine a nursing home resident's total income, including income disregarded during the spenddown process. § 435.726(c). They then subtract from that total any *incurred medical expenses* deducted during spenddown. If a resident has available income remaining, CMS assumes the resident will use it to defray room and board costs and directs states to subtract that amount from Medicaid's payment to the nursing home. § 435.725(a).

*Maryland Dept. of Health & Mental Hygiene*, 542 F.3d at 430 (emphasis added). Thus, the amount the recipient must contribute to the cost of long-term-care—the recipient's post-eligibility contribution to care—is dependant upon the amount of his income less prescribed deductions.[3] 42 U.S.C. § 1396a(r)(1)(A).

Medicaid's purpose, in providing these prescribed deductions, is to permit recipients receiving long-term-care to have sufficient income to pay for medical services that are necessary to their health, but are not subject to payment by Medicaid under the state's plan. *See Maryland Dept. of Health & Mental Hygiene*, 542 F.3d at 431; *see also* H.R. Rep. No. 100-661, at 266 (1988) (Conf. Rep.), *as reprinted in* 1988 U.S.C.C.A.N. 923, 1044. For

---

[3] Prescribed deductions included: "(1) Personal needs allowance ... (2) Maintenance needs of spouse ... (3) Maintenance needs of family ... (4) Expenses not subject to third party payment. Amounts for incurred expenses for medical or remedial care that are not subject to payment by a third party, including--(i) Medicare and other health insurance premiums, deductibles, or coinsurance charges; and (ii) Necessary medical or remedial care recognized under State law but not covered under the State's Medicaid plan, subject to reasonable limits the agency may establish on amounts of these expenses. (5) Continued SSI and SSP benefits." 42 C.F.R. §§ 435.725(c)(1)-(5).

6

example, if Medicaid recipient who is a nursing home resident requires chiropractic, podiatry, dental care (other than emergency dental and oral surgery), or a hearing aid, each of which are not covered items under the state's plan, the actual cost of the item would be deducted from the recipient's otherwise required contribution to the cost of his care amount, so that the recipient would retain this part of his income to pay for the medically necessary non-covered item.

Among the prescribed deductions—and relevant here—are those pertaining to the recipient's "incurred medical expenses" for

> medical or remedial care that are not subject to payment by a third party, including ... necessary medical or remedial care recognized under State law but not covered under the State [Medicaid] plan ... subject to reasonable limits the State may establish on the amount of these expenses.

42 U.S.C. § 1396a(r)(1)(A)(ii). It is in the determination, and the extent of, "incurred medical expenses" that may be properly deducted from a recipient's income to determine his post-eligibility contribution to care amount that is at issue in this matter.

Currently, it is the policy of Defendants, under Michigan's Medicaid Plan, to specifically exclude deductions for the cost of long-term-care (e.g., nursing home bills) incurred prior to eligibility. (Compl. ¶ 33.)

### D. Defendants' Current Policy

The policy of Defendants with regard to computing a recipient's post-eligibility contribution to care amount is set forth in Part 546 of the DHS Program Eligibility Manual (PE Manual). (Compl. ¶ 33; Ex. D.) The PE Manual provides that a recipient's post-eligibility contribution to care amount is calculated by subtracting "total need" from "total income," defining total need to include the sum of the personal needs allowance, community spouse

income allowance, family allowance, children's allowance, health insurance premiums and guardianship/conservator expenses. (Compl. Ex. D at 2.)

The PE Manual also provides for deductions for pre-eligibility medical expenses (PEME), but those deductions are limited to "[t]he cost of certain medically necessary services not covered by [Medicaid] such as chiropractic, podiatry, dental (other than emergency dental and oral surgery), hearing aid ..., and ... [Medicaid] co-payments for covered services." (Compl. Ex. D at 8-9.) Expressly excluded from the list of permissible PEME deductions are costs for long-term-care incurred prior to eligibility.

> Medical expenses such as the cost of LTC [long-term-care], are never used to determine a post-eligibility [contribution to care amount]."

(Compl. Ex. D at 2.)

### E. Plaintiffs' Allegations

This dispute involves Defendants interpretation of 42 U.S.C. § 1396a(r)(1)(A), which in part provides that "with respect to the post-eligibility treatment of income for individuals who are institutionalized," states should deduct expenses for "necessary medical or remedial care recognized under State law but not covered under the State plan ... subject to reasonable limits the State may establish on the amount of these expenses." 42 U.S.C. § 1396a(r)(1)(A). Pursuant to this statutory language, CMS promulgated regulations requiring states to deduct uncovered but medically necessary expenses that nursing home residents incurred before becoming eligible for Medicaid benefits from the amount of post-eligibility income those residents must contribute to the cost of their long-term-care. 42 C.F.R. § 435.725(c)(4).

Plaintiffs' petition asserts that Defendants' policy, disallowing deductions for certain PEME—specifically, the costs of long-term-care incurred prior to eligibility—is based on an unreasonable interpretation of 42 U.S.C. § 1396a(r)(1)(A) regarding the calculation of a recipient's post-eligibility contribution to care amount, and that such an interpretation is in violation of 42 U.S.C. § 1396a(r)(1)(A) and 42 C.F.R. § 435.725. (Compl. ¶ 1.)

Defendants, in defining what it considers a non-covered expense, have taken the position that "[s]ince nursing home services are a state plan service in Michigan, the State does not believe that the law requires an offset of the patient pay amount [post-eligibility contribution to care amount] by any amount past due the [recipient] for nursing home services." (Comp. Ex. G at 3.) Defendants have interpreted 42 U.S.C. § 1396a(r)(1)(A) language—"necessary medical or remedial care recognized under State law but *not covered* under the State plan"—in the context of medical *services* not covered rather than medical *expenses* not covered. Defendants, therefore, do not include as a deduction the costs for any of the services *listed* in its Medicaid plan, as opposed to the cost of services—both listed services and non-listed services—that have not been *reimbursed* by Medicaid under its plan. Under Defendants rationale, any of the services listed in its plan that were not reimbursed by Medicaid are not deducted in the post-eligibility contribution to care process. Defendants have maintained this policy notwithstanding informal advise from CMS to the contrary.

> We do not agree with this approach. For post eligibility purposes, as required by section 1902(r)(1) of the Act, services not covered under a State's plan are any services not paid for by Medicaid for that particular individual, regardless of the reason for non-payment. These include services listed as covered services in the State plan, as well as services the plan does not cover. They also include services the individual received prior to becoming eligible for Medicaid, as well as services received after becoming eligible.

9

(Compl. Ex. H at 3.)

Defendants would also disallow as a deduction long-term-care expenses for dates of service before the three-month retroactive period associated with the effective date of Medicaid eligibility. Here too, Defendants have maintained this policy notwithstanding informal advise from CMS to the contrary.

> Michigan excludes as incurred medical expenses bills incurred when the individual was not Medicaid eligible. We do not agree with the State's policy on this issue. Nursing home costs incurred prior to a period of Medicaid eligibility are deductible under the post eligibility process, since these expenses were incurred when the person was ineligible for Medicaid and thus Medicaid did not pay for them. In order for these old expenses to be deducted under the post eligibility process the individual must be currently obligated to pay for these nursing home costs.

(Compl. Ex. H at 3.)

CMS also noted that "these and other incurred medical and remedial expenses are subject to *reasonable limits* which may be establish by the State Medicaid program." (Compl. Ex. H at 3 (emphasis added).) States, therefore, have the ability to place "reasonable limits" on a recipient's expenditures for medical or remedial care that may be deducted in the post-eligibility process. Those reasonable limits must, however, "ensure that nursing home residents are able to use their own funds to purchase necessary medical or remedial care not covered [i.e., not paid for] by the State Medicaid program." H.R. Rep. No. 100-661, at 266 (1988) (Conf. Rep.), *as reprinted in* 1988 U.S.C.C.A.N. 923, 1044. Informally, CMS has noted that

> [i]t is reasonable for a State to place a limitation on the age of nursing home bills that may be deducted as incurred medical expenses. For example, a State can limit deduction of medical expenses to those incurred during the three months prior to the person becoming eligible for Medicaid. But, Michigan's policy to limit the deduction of medical expenses to those incurred only during a period of eligibility for Medicaid does not comport with federal

> requirements specified under section 1902(r)(1) of the Act. An individual who incurred medical expenses during the three month period prior to application would not have any funds available under the post eligibility calculation to actually pay for medical expenses incurred during that period unless he ... was determined to be eligible during that period.

(Compl. Ex. H at 3.) It would "be reasonable for a State to provide that only uncovered services prescribed by a physician may be deducted. It would also be reasonable for States to impose specific dollar limits for specific services or items, provided that these limits reflect annual increases in the cost of medical care services and supplies." H.R. Rep. No. 100-661, at 266 (1988) (Conf. Rep.), *as reprinted in* 1988 U.S.C.C.A.N. 923, 1044. On the other hand,

> it would not be reasonable for States to set an overall dollar limit, such as $50 per month, for all noncovered services. Similarly, it would not be reasonable for States to impose a limit on the number of medically necessary services or items that an individual could deduct in any month.

H.R. Rep. No. 100-661, at 266 (1988) (Conf. Rep.), *as reprinted in* 1988 U.S.C.C.A.N. 923, 1044.

Additionally, any reasonable limitation must be included in the state's plan. According to CMS, "[i]f a state has not included its definition of reasonable limits in its State Medicaid plan, then such limits cannot be imposed in the post-eligibility process." (Compl. Ex. E at 2.) Defendants' plan defines reasonable limits as that which is a "usual and customary charge for the noncovered medical or remedial service, as those charges are determined by the Department's Medical Services Administration." (Compl. Ex. F.) Defendants' plan does not, however, expressly include a temporal condition in its definition of reasonable limits.

### F. Defendants' Proposed State Plan Amendment

11

CMS has "promulgated guidelines in its State Medicaid Manual subjecting the states' discretion to define 'reasonable limits' to CMS's review." *Maryland Dept. of Health & Mental Hygiene*, 542 F.3d at 431 (internal citation omitted). Those guidelines directed states that:

> Reasonable limits (if any) must be submitted by you *for approval by [CMS]* in the Medicaid State plan.

State Medicaid Manual § 3703.8 (emphasis added). "Consequently, while states could propose limits on post-eligibility deductions of incurred medical expenses ... CMS reserved the power to review those proposals for reasonableness on a case-by-case basis." *Maryland Dept. of Health & Mental Hygiene*, 542 F.3d at 432.

Prior to the filing of this action—and allegedly before DCH had any notice that this action was to be filed—Defendants, on September 2, 2009, submitted a state plan amendment to CMS. The amendment was intended to address the limitations that Defendants proposed to place on the expenditures for medical or remedial care that may be deducted in the post-eligibility process. (Dreasky Aff. ¶ 4, Defs.' Mot., Ex. A.)

Following submission of the state plan amendment, in an October 13, 2009 meeting between representatives of Defendants and CMS, CMS attempted to ascertain Defendants' policy intentions behind the language submitted with the amendment. (*Id.* ¶ 5.) Defendants communicated to CMS that the intent of the submission was to amend the Michigan Medicaid State Plan to provide deductions for reasonable and necessary medical expenses not covered by Medicaid, which are incurred within the *three month period* prior to the month of application. (*Id.* ¶ 5 (emphasis added).) At this meeting, CMS proposed alternate language to Defendants that would allegedly meet CMS's approval and comply with section 1902(r)(1)(A) of the Social Security Act. The alternate language was as follows:

> Reasonable and necessary medical expenses not covered by Medicaid, incurred within the 3 month period prior to the month of application, are allowable deductions.

(*Id.* ¶ 5.) At the conclusion of that meeting, CMS advised Defendants to resubmit the amendment with the proposed alternate language for CMS to conduct an informal review prior to sending the amendment in as an official replacement page to their state plan. (*Id.* ¶ 6.) Defendants did so on November 12, 2009. (Oppenheimer Aff. ¶ 3, Defs.' Reply, Ex. A.)

On November 17, 2009, in a Request for Additional Information (RAI) sent to DCH, CMS noted that it had reviewed DCH's request to amend the Michigan Medicaid State Plan submitted on September 2, 2009 to seek "approval to place reasonable limits on the amounts of incurred necessary medical and remedial care expenses which must be deducted from a nursing facility resident's income under the post eligibility treatment of income process." (Oppenheimer Aff. ¶ 4.) In the RAI, CMS expressed additional concern over the language in Defendants amendment stating that "[i]t is not clear what happens to expenses incurred prior to this three month period." (Oppenheimer Aff. ¶ 5.) The RAI then proposed that "in order to make this limitation clearer, DCH should add an additional sentence specifying that, 'Expenses incurred prior to this three month period are not allowable deductions.'" (Oppenheimer Aff. ¶ 5 (internal quotation omitted).) According to Defendants:

> DCH fully anticipates that the additional language requested in the RAI will be submitted to CMS before the end of the month of December, 2009.
>
> DCH will continue its efforts to work with CMS to reach agreement on mutually acceptable language that will result in an approved [state plan amendment]. On the basis of all indications to date, this process shall soon be completed.

(Oppenheimer Aff. ¶ 5[4]-6.) According to Defendants, CMS's decision will be forthcoming in no more than eight weeks. (Dreasky Aff. ¶ 7, Defs.' Mot., Ex. A.)

Plaintiff filed this action under 42 U.S.C. § 1983 alleging that Defendants have violated and are continuing to violate federal law by refusing to deduct certain PEME in the post-eligibility contribution to care process. As Defendants have a state plan amendment under review by CMS addressing the subject matter of this action, they have requested a stay of this proceeding pending a determination by CMS of the outstanding Michigan Medicaid State Plan amendment. This matter is before the Court on Defendants' motion for stay of proceeding.

## II.  Analysis

The doctrine of primary jurisdiction "is concerned with promoting proper relationships between the courts and administrative agencies charged with particular regulatory duties." *Nader v. Allegheny Airlines, Inc.*, 426 U.S. 290, 303 (1976). The doctrine is properly invoked when enforcement of a claim in court would require resolution of issues that have already been placed within the special competence of an administrative body.

> That doctrine seeks to produce better informed and uniform legal rulings by allowing courts to take advantage of an agency's specialized knowledge, expertise, and central position within a regulatory regime.
>
> No fixed formula exists for the doctrine's application. Rather, the question in each instance is whether a case raises issues of fact not within the conventional experience of judges, but within the purview of an agency's responsibilities; whether the limited functions of review by the judiciary are more rationally exercised, by preliminary resort to an agency better equipped than courts to resolve an issue in the first instance; or, in a word, whether preliminary reference of issues to the agency will promote that proper

---

[4] This Court notes that the Oppenheimer Affidavit has two paragraphs erroneously labeled "5."

14

> working relationship between court and agency that the primary jurisdiction doctrine seeks to facilitate.

*Pharmaceutical Research & Manufacturing of America v. Walsh*, 538 U.S. 644, 673 (Breyer, J., concurring in part and concurring in the judgment) (internal citations and quotations omitted).

The doctrine is applied on a case-by-case basis, and courts consider several factors. First, courts examine "whether the reasons for the existence of the doctrine are present and whether the purposes it serves will be aided by its application in the particular litigation." *United States v. Western Pac. R. Co.*, 352 U.S. 59, 64 (1956). Second, courts determine if uniformity is desirable and could be obtained through administrative review. *Id.* (citing *Texas & Pac. Ry. Co. v. Abilene Cotton Oil Co.*, 204 U.S. 426 (1907)). Finally, courts consider the "expert and specialized knowledge of the agencies involved." *Western Pac.*, 352 U.S. at 64 (citing *Far East Conference*, 342 U.S. 570 (1952)). Applying these factors here, the Court finds that the doctrine of primary jurisdiction is applicable.

The standard for determining Medicaid eligibility is a matter that Congress has placed within the special competence of CMS.

> 42 U.S.C. § 1396a(a)(17) unambiguously confers on the Secretary the power to stand in the shoes of Congress and interpret the Medicaid statute.

*Maryland Dept. of Health & Mental Hygiene*, 542 F.3d at 436 (internal citations and quotations omitted). Pursuant to 42 U.S.C. § 1396a(a)(17), the Medicaid statute also outlines congressional policy regarding the states' responsibilities for determining Medicaid eligibility. There Congress commands states to "include *reasonable* standards ... in accordance with standards prescribed *by the Secretary*." *Id.* (emphasis added).

15

Significantly, that statute also limits the authority of the states to specifically calculate income. States must

> provide for taking into account only such income and resources as are, as determined in accordance with standards prescribed *by the Secretary*, available to the applicant or recipient ... and provide for flexibility in the application of such standards with respect to income by taking into account, except to the extent prescribed *by the Secretary*, the costs ... incurred for medical care.

*Id.* (emphasis added). "It is the Secretary therefore, not the states, to whom Congress has explicitly delegated the authority to prescribe the standards for determining eligibility, available income, and deductions for medical expenses." *Maryland Dept. of Health & Mental Hygiene*, 542 F.3d at 433.

In this action, Plaintiffs allege that Defendants policy violates 42 U.S.C. § 1396a(r)(1)(A) which provides for deductions from a long-term-care-recipient's post-eligibility contribution to care amount. Although section 1396a(r)(1)(A) "unambiguously commands states to take into account 'medical care recognized under State law but not covered under the State plan,' it does not, however, "define the phrase 'not covered under the State plan.' By failing to define the phrase, Congress left an interpretive gap that CMS may fill." *Maryland Dept. of Health & Mental Hygiene*, 542 F.3d at 434. Further, as discussed above, CMS has promulgated guidelines in its State Medicaid Manual subjecting the states' discretion to define "reasonable limits" to CMS's review and approval. "Consequently, while states could propose limits on post-eligibility deductions of incurred medical expenses ... CMS reserved the power to review those proposals for reasonableness on a *case-by-case* basis." *Maryland Dept. of Health & Mental Hygiene*, 542 F.3d at 432 (emphasis added). Defendants have submitted a state plan amendment to

16

CMS that seeks CMS's requisite approval in this area "which, under [the] regulatory scheme, ha[s] been placed within [CMS's] special competence." *Western Pac.*, 352 U.S. at 64.

If this Court were to consider the reasonableness of Defendants' challenged policy, issues related to the pending state plan amendment would necessarily be involved. Allowing CMS to first consider whether Defendants' proposed plan limitations are "reasonable" as required under section 1396a(r)(1)(A) is consistent with the purposes of the primary jurisdiction doctrine. Congress has created this agency to regulate the subject matter at issue here—and has specifically delegated authority to review state plan's and amendments thereto for compliance with the applicable federal statutory and regulatory requirements—and CMS's expertise in determining whether limitations on the amount of expenses are "reasonable" should not be passed over.

> CMS regional staff reviews State plans and plan amendments, discusses any issues with the Medicaid agency, and consults with central office staff on questions regarding application of Federal policy.

42 C.F.R. § 430.14. CMS has specialized knowledge of the Medicaid system, has gained insight through experience, and that knowledge should lead to a better understanding of the nature of this dispute.

> We have recently held that deference in the interpretation of the Medicaid statute is particularly warranted ... The Medicaid statute is a prototypical complex and highly technical regulatory program benefiting from expert administration ... The administrative process through which state plan amendments are considered also counsels deference.
>
> Moreover, [r]ecognizing the mechanisms for evaluation of amendments at the agency level, [w]e take care not lightly to disrupt the informed judgments of those who must labor daily in the minefield of often arcane policy, especially given the substantive complexities of the Medicaid statute.

*Maryland Dept. of Health & Mental Hygiene*, 542 F.3d at 428 (internal citations and quotations omitted).

In *Pharmaceutical Research*, Justice Breyer, specifically recognized the doctrine of primary jurisdiction's relevance in the Medicaid context.

> [CMS] administers the Medicaid program. Institutionally speaking, that agency is better able than a court to assemble relevant facts (e.g., regarding harm caused to present Medicaid patients) and to make relevant predictions (e.g., regarding furtherance of Medicaid-related goals). And the law grants significant weight to any legal conclusion by the Secretary as to whether a program ... is consistent with Medicaid's objectives.
>
> The Medicaid statute sets forth a method through which [a state] may obtain those views. A participating State must file a Medicaid plan with [CMS] and obtain [CMS] approval. 42 U.S.C. § 1396. A State must also promptly file a plan amendment to reflect any material changes in State law, organization, or policy, or in the State's operation of the Medicaid program.

*Pharmaceutical Research*, 538 U.S. at 673 (Breyer, J., concurring in part and concurring in the judgment) (internal quotations omitted). Justice Breyer also noted that the "doctrine seeks to produce better informed and uniform legal rulings by allowing court to take advantage of an agency's specialized knowledge, expertise, and central position within a regulatory regime." *Id.* at 673.

Plaintiffs' arguments against application of the doctrine of primary jurisdiction are not persuasive. Plaintiff first contends that "there is no need for further policy analysis ... [as] CMS has already advised [Defendants] of its position." (Pls.' Resp. at 7.) Based on the documents contained in the record, CMS has only provided Defendants with informal responses and has yet to formally approve, or disapprove, Defendants' policy related to the computation of a long-term-care-recipient's post-eligibility contribution to care amount. Plaintiffs next argue that the doctrine only applies where technical and intricate matters of

fact are involved, and that "[h]ere there is no intricate interplay of complicated and disputed facts with various potentially conflicting policies from a regulatory body." (Pls.' Resp. at 6.) Plaintiffs, however, contradict that assertion in part by claiming that "[t]he only technical issue to be resolved by CMS for Defendants is whether a 90-day limitation on the applicability of PEME is reasonable." (Pls.' Resp. at 9.) Finally, Plaintiffs object to Defendants' motion asserting that any deferral of jurisdiction by this Court "could leave this case in limbo for many years, because the State plan approval process can be quite lengthy." (Pls.' Resp. at 7.) Defendants counter this argument, claiming that "[o]n the basis of all indications, CMS will soon be approving Defendants' amended State plan according to the regulatory body's expressed specifications." (Defs.' Reply at 4.)

Where, as here, the conditions of primary jurisdiction are satisfied a "court may then stay its proceedings—for a limited time, if appropriate—to allow a party to initiate agency review." *Pharmaceutical Research*, 538 U.S. at 674 (Breyer, J., concurring in part and concurring in the judgment) (internal quotations omitted). Here, a time limit on a stay of further proceedings is appropriate. According to Defendants, "granting Defendants' motion would defer this Court's jurisdiction only for the limited period for this quickly evolving process to be completed," (Defs.' Reply at 4), a process which should be completed by March 31, 2010.[5]

---

[5] Defendants "fully anticipate that the additional language requested in the RAI will be submitted to CMS before the end of the month of December, 2009." (Oppenheimer Aff. ¶ 5.) In accordance with 42 C.F.R. § 430.16(a)(1), a state plan or plan amendment will be considered approved unless CMS, within 90 days after receipt, sends the state written notice of disapproval or notice of any additional information it needs in order to make a final determination. If, as here, CMS has requested additional information, the 90-day period for CMS actions begins on the day it receives the requested information. 42 C.F.R. § 430.16(a)(2).

**III.   Conclusion**

For the foregoing reasons, Defendants' motion for stay of proceedings is hereby GRANTED IN PART. This Court STAYS the case pending a determination by the Centers for Medicare and Medicaid (CMS) of Defendants' outstanding Michigan Medicaid State Plan amendment, NOT TO EXCEED 120 DAYS.

       s/Nancy G. Edmunds
       Nancy G. Edmunds
       United States District Judge

Dated: December 21, 2009

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on December 21, 2009, by electronic and/or ordinary mail.

       s/Carol A. Hemeyer
       Case Manager